## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re:* Defendant Intel Corporation's Subpoena to University of Maryland | Misc. Case No. |
| c/o University of Maryland Office of General Counsel 4716 Pontiac St., Suite 2117 College Park, MD 20742 | **ORAL HEARING REQUESTED** |
| XMTT, Inc., 3 Kettle Pont Ct. Potomac, MD 20854 | D. Del. Case No. 1:18-cv-01810-RGA |
| Plaintiff, | |
| v. | |
| INTEL CORPORATION 2200 Mission College Blvd., Santa Clara, CA 95054 | |
| Defendant. | |

## PLAINTIFF'S MOTION TO QUASH DEFENDANT'S SUBPOENA TO THIRD-PARTY UNIVERSITY OF MARYLAND

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), plaintiff XMTT, Inc. ("XMTT") respectfully requests an order quashing or modifying the subpoena ("Subpoena") served on third-party University of Maryland (the "University") by defendant Intel Corporation ("Intel"). Intel improperly seeks a broad array of documents of XMTT's founder, Professor Uzi Vishkin, through a subpoena to his employer, the University—rather than just seeking them from Professor Vishkin directly. Many of the documents sought are known to include information that is plainly protected by the attorney-client privilege and work-product doctrine. The University, however, does not wish to spend the resources necessary to separate the material

protected by those doctrines from material that is properly subject to discovery.  In the interests

of safeguarding his privileged and work product information, Professor Vishkin's counsel is

ready and able to perform that task on his documents.  Accordingly, as explained in more detail

in the memorandum of points and authorities below, XMTT respectfully requests that the Court

order the University to first provide any documents it locates in response to the subpoena to

XMTT, so that XMTT and Professor Vishkin can review them for privilege or work-product

protection, and then produce the remaining documents to Intel along with a privilege log of

anything withheld.

The parties met and conferred by telephone at least on November 7 and 14, 2019 but were

unable to reach resolution.

XMTT respectfully requests oral argument pursuant to Local Rule 7(f).

Dated: November 22, 2019                    Respectfully submitted,

Benjamin B. Klubes (D.C. No. 428852)
BUCKLEY LLP
2001 M Street, N.W., Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
bklubes@buckleyfirm.com

*Counsel for Plaintiff XMTT, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2019, a true and correct copy of the foregoing document has been served via email and postage pre-paid, first class U.S. Mail on the following:

Jack B. Blumenfeld
Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jtigan@mnat.com

Brian D. Matty
Jeffrey S. Seddon, II
Laurie N. Stempler
Michael Wueste
Paul A. Bondor
Priyanka R. Dev
Thomas J. Derbish
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
bmatty@desmaraisllp.com
jseddon@desmaraisllp.com
lstempler@desmaraisllp.com
mwueste@desmaraisllp.com
pbondor@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Counsel for Defendant Intel Corporation*

Date: November 22, 2019

Benjamin B. Klubes (D.C. No. 428852)
BUCKLEY LLP
2001 M Street, N.W., Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
bklubes@buckleyfirm.com
*Counsel for Plaintiff XMTT, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re:* Defendant Intel Corporation's Subpoena to University of Maryland | Misc. Case No. |
| c/o University of Maryland Office of General Counsel 4716 Pontiac St., Suite 2117 College Park, MD 20742 | **ORAL HEARING REQUESTED** |
| XMTT, Inc., 3 Kettle Pont Ct. Potomac, MD 20854 | D. Del. Case No. 1:18-cv-01810-RGA |
| Plaintiff, | |
| v. | |
| INTEL CORPORATION 2200 Mission College Blvd., Santa Clara, CA 95054 | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH DEFENDANT'S SUBPOENA TO THIRD-PARTY UNIVERSITY OF MARYLAND

**TABLE OF CONTENTS**

                                                                                                    **Page**

I.          FACTUAL BACKGROUND.................................................................................. 2

II.         ARGUMENT ...................................................................................................... 5

     A.     Professor Vishkin's Communications Are Protected by the Attorney-Client
            Privilege. .................................................................................................... 5

            1.     Professor Vishkin's Use of the University's Email Servers Does Not
                   Preclude Application of the Attorney-Client Privilege. ........................... 6

            2.     The University's Collection Efforts in Response to the Subpoena Do
                   Not Change the Privilege Analysis. ........................................................ 9

     B.     Professor Vishkin's Documents Are Also Protected By The Work-Product
            Doctrine. .................................................................................................. 11

     C.     The Subpoena Improperly Circumvents The ESI Order And Subjects XMTT
            To Undue Burden. ..................................................................................... 13

III.        CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*\*In re Asia Global Crossing, Ltd.*,
   322 B.R. 247 (S.D.N.Y. 2005) ...................................................................6, 8

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*,
   103 F.R.D. 52 (D.D.C. 1984) ...........................................................................13

*Cobell v. Norton*,
   213 F.R.D. 69 (D.D.C. 2003) ...........................................................................10

*\*Convertino v. U.S. Dept. of Justice*,
   674 F. Supp. 2d. 97 (D.D.C. 2009)...............................................................6, 8

*Feld v. Fireman's Fund Ins. Co.*,
   991 F. Supp. 2d 242 (D.D.C. 2013)..................................................................12

*Gotham City Online, LLC v. Art.com, Inc.*,
   C 14-00991 JSW, 2014 WL 1025120 (N.D. Cal. Mar. 13, 2014)............................4

*HT S.R.L. v. Velasco*,
   125 F. Supp. 3d 211 (D.D.C. 2015).....................................................................1

*Judicial Watch, Inc. v. Dept. of Justice*,
   432 F.3d 366 (D.C. Cir. 2005).............................................................................12

*In re Keeper of Records*,
   348 F.3d 16 (1st Cir. 2003)..................................................................................11

*In re Kellogg Brown & Root, Inc.*,
   796 F.3d 137 (D.C. Cir. 2015).............................................................................11

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998)..............................................................................5

*Rico v. Mitsubishi Motors Corp.*,
   42 Cal. 4th 807 (2007).........................................................................................4

*S.E.C. v. Lavin*,
   111 F.3d 921 (D.C. Cir. 1997)..........................................................................9, 10

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998)..............................................................................11

*Spears v. First Am. eAppraiseIT, LLC,*
  75 F. Supp. 3d 208 (D.D.C. 2014)..................................................................9

*In re Subpoenas Duces Tecum,*
  738 F.2d 1367 (D.C. Cir. 1984)......................................................................9

*U.S. v. Preston,*
  No. 13-00265 (RC), 2015 WL 13708609 (D.D.C. Aug. 24, 2015)...........................1

*\*U.S. v. Williams Cos., Inc.,*
  562 F.3d 387 (D.C. Cir. 2009).......................................................................13

*In re Vitamin Antitrust Litig.,*
  2002 WL 35021999 (D.D.C. Jan. 23, 2002)......................................................9

*Wultz v. Bank of China, Ltd.,*
  304 F.R.D. 38 (D.D.C. 2014) .........................................................................1

## Statutes, Rules, and Regulations

Fed. R. Civ. P. 26.........................................................................................11

Fed. R. Civ. P. 45.................................................................................*passim*

Maryland Code, General Provisions § 4-301(a)(1) .............................................7

## Other Authorities

D.C. Bar Legal Ethics Committee Opinion 256 ..................................................4

D.C. Bar Legal Ethics Committee Opinion 318 ..................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

Intel served a third-party subpoena that seeks an expansive set of documents from XMTT's founder, Professor Uzi Vishkin.  Intel served that subpoena on Professor Vishkin's employer, the University of Maryland ("University"), rather just seeking those same materials from Professor Vishkin himself.  While neither the parties nor the University has reviewed these materials, many documents within the broad scope of the subpoena are known to be plainly protected by the attorney-client privilege and work-product doctrine.  Federal Rule of Civil Procedure 45(d)(3)(A) provides that, on "timely[1] motion, the court for the district where compliance is required[2] **must** quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter,

---

[1] The parties agreed that the deadline for filing a motion to quash would be 14 days after the University announced that it completed its search.  *See* Tucker Decl. Ex. 2 at 3.  The University completed its search on November 11, 2019, which is fewer than 14 days from the date of this filing.  *See id.* at 1.  XMTT's motion is timely under the parties' agreement that any motion to quash be filed within 14 days of the completion of the University's search.

[2] Although the University is based in Maryland, the Subpoena calls for documents and testimony to be produced in Washington, DC.  *See* Tucker Decl. Ex. 1 at 3.  Therefore, "the court for the district where compliance is required" as that term is found in FRCP 45 is Washington, DC.  *See, e.g.*, *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 222 (D.D.C. 2015) (*vacated on other grounds*) (Although the respondent resided in Maryland, "the Subpoena states that compliance is required at Petitioner's counsel's office [in the] District of Columbia []. Accordingly, a motion to compel compliance with the Subpoena must be filed in the District of Columbia."); *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 43 (D.D.C. 2014) ("However, because Mr. Shaya was served in the District of Columbia and the subpoena commands his attendance here, this Court is the court where compliance is required."); *U.S. v. Preston*, No. 13-00265 (RC), 2015 WL 13708609, at *2 (D.D.C. Aug. 24, 2015) ("Here, the subpoena was issued by this Court but commanded Mr. Owens, a nonparty, to appear for a deposition in Fairfax County, Virginia, where the deposition then took place. … By the plain language of the rule, then, the appropriate court to review this motion … is the U.S. District Court for the Eastern District of Virginia.").  Moreover, Fed. R. Civ. P. 45(c) is titled "Place of Compliance" and then discusses the locations where a "subpoena may **command** [] production" (emphasis added); the Rule therefore clearly contemplates that the place where production is "commanded" is "where compliance is required," and the Subpoena to the University commands production in Washington, DC.  *See* Tucker Decl. Ex. 1 at 3.

- 1 -

if no exception or waiver applies; or (iv) subjects a person to undue burden" (emphasis added). Accordingly, Intel's improper subpoena should be quashed.

Professor Vishkin's employer (the University) has made it clear that it does not wish to expend the resources necessary to review Professor Vishkin's documents to segregate the portions that are privileged or work product, on one hand, from the portions that are protected from discovery, on the other. Therefore, as a practical solution, XMTT requests that the Court order the University first to provide the subpoenaed documents to counsel for Professor Vishkin and XMTT, so that counsel can review the documents for privilege and work-product protection. Any documents not subject to privilege or work product protection then can promptly be produced to Intel along with a privilege log for any materials properly withheld.

## I.   FACTUAL BACKGROUND

Dr. Uzi Vishkin owns XMTT, Inc. and has been a professor at the University for decades. Professor Vishkin pioneered and patented groundbreaking technology that Intel is infringing. *See generally XMTT, Inc. v. Intel Corp.*, Case No. 1:18-cv-01810-RGA, at Dkt. 1 (D. Del.). The Court in the underlying litigation entered a Stipulated Order Regarding Electronic Discovery that governs, among other things, the process by which electronically stored information ("ESI") such as emails is produced. *See* Ex. 7[3] (Dkt. 42 in the underlying litigation). The Order contemplates that a party may identify custodian(s) whose ESI it would like searched, the parties propose and confer regarding search terms, and then records of the custodian(s) are searched and produced. Ex. 7 at 13-14. Pursuant to the Order, Intel identified Professor Vishkin as a custodian, the parties conferred regarding search terms for Professor Vishkin's ESI, and XMTT is in the process of

---

[3] Unless otherwise specified, all exhibits refer to those attached to the Tucker Declaration.

reviewing and producing Professor Vishkin's emails identified by agreed search terms. *See* Ex. 8 at 1, 4.

In parallel, Intel served a broad subpoena on the University (which is not a party to the underlying litigation) seeking, among other things, all communications relating to the Patents-in-Suit, without regard for whether such documents are properly discoverable. *See* Ex. 1 (Subpoena) Requests 11-13. Not all of Professor Vishkin's documents stored on the University's servers are properly discoverable. Dr. Vishkin has used his University-provided email address to send and receive communications that are quintessentially privileged and protected by the work-product doctrine. This includes communications with his ***current trial counsel*** (Irell & Manella LLP) and ***other patent counsel***, including Trellis Law; Rosenberg, Klein & Lee; and ***other firms and individual attorneys*** that have represented him in the past. *See* Vishkin Decl. ¶ 2.

Professor Vishkin has always expected that these privileged and work product materials were communicated in confidence. *See* Vishkin Decl. ¶ 3. Indeed, over decades of use of his University email address, no one informed him otherwise. *See* Vishkin Decl. at ¶ 4. Accordingly, when the materials were subpoenaed, his counsel reached out to the University to ensure that his rights would be respected. *See generally* Ex. 4. In response, the University indicated that it did not wish to spend the time or money reviewing the enormous set of documents Intel had subpoenaed from his email account or otherwise. Therefore, XMTT proposed a reasonable and practical compromise to resolve the situation.

Specifically, XMTT proposed that the University first provide XMTT with all of the responsive documents that the University was able to locate, so that XMTT's counsel could review those documents solely for privilege and work-product protection. Then XMTT would produce all remaining documents to Intel along with a privilege log for all documents that were withheld.

*See* Ex. 3 at 2.  Intel refused to proceed in this sensible manner, however, instead insisting that the

University produce all collected documents—including those known to be protected by attorney-

client privilege and work-product protection—simultaneously to both parties.  Intel posited that

XMTT could then claw back any protected material pursuant to Fed. R. Civ. P. 45(e)(2)(B).  *See*

Ex. 3 at 2.  It makes no sense for Intel to begin reviewing documents already known full well to

include plainly protected material, such as communications with Professor Vishkin's ***current***

***litigation counsel***, only then to be required to return or destroy that material while the parties

litigate privilege issues on a document-by-document basis.[4]  XMTT explained those points to Intel,

to no avail.  *See, e.g.*, Ex. 3 at 1-2.

The practical effect of Intel's position would be an end-run around both (i) the Federal

Rules of Civil Procedure and (ii) the agreed discovery procedures in the Delaware litigation, giving

---

[4] Intel's proposal runs counter to fundamental principles of ethical legal practice, in which the
protection of privileged material is paramount and the potential for review of privileged material
by an adversary is highly disfavored.  For example, in this District, attorneys that receive
inadvertently disclosed privileged material and are informed of the privileged nature of the
material are required to "seek guidance from the sending lawyer" and return the material, unread,
if asked—to do otherwise "would be a dishonest act, in violation of Rule 8.4(c)." D.C. Bar Legal
Ethics Committee Opinion 256 (June 1995).  Similarly, a lawyer who receives documents from a
third party "proceeds at his own risk if indicia of a privileged document do exist and there is not
a reasonable basis to conclude that the privilege has been waived," and is encouraged to "refrain
from reviewing the materials until a definitive resolution of the proper disposition of the
materials is obtained from a tribunal." D.C. Bar Legal Ethics Committee Opinion 318 (December
2002). Here, XMTT has **expressly** informed Intel that the documents it seeks from the
University of Maryland contain plainly protected material, that neither XMTT nor Professor
Vishkin have waived any privilege or protection over the material, and that the University of
Maryland is not authorized to disclose the protected material to Intel. It would make no sense for
Intel to begin reviewing materials known to contain privileged material that XMTT has had no
opportunity to identify on a privilege log to facilitate resolution of the privilege claim (and any
objection thereto by Intel) by a court. To do so simply creates a wholly unnecessary risk of
disclosure of Professor Vishkin's privileged communications to a litigation adversary—a bell
that once rung, cannot be undone, and in many jurisdictions can lead to disqualification of
counsel should the privilege claim be upheld. *See, e.g.*, *Rico v. Mitsubishi Motors Corp.*, 42 Cal.
4th 807, 817-20 (2007); *see also Gotham City Online, LLC v. Art.com, Inc.*, C 14-00991 JSW,
2014 WL 1025120 at *4 (N.D. Cal. Mar. 13, 2014).

Intel improper access to materials known to be protected by both the attorney-client privilege and work product doctrine, including documents of the most sensitive sort such as communications with trial counsel in the very case Professor Vishkin's company is actively litigating against Intel. Indeed, some of these materials are so undoubtedly protected from discovery that, per the parties' agreement in the Delaware litigation, if Intel requested them from XMTT in party discovery, XMTT would not even be required to provide a privilege log. *See* Ex. 7 at 5. Intel is not entitled to use Rule 45 to obtain privileged documents and work product from a third party that is not sufficiently motivated to protect those materials on behalf of its employee. The Court should order a sensible compromise that allows Professor Vishkin's rights to be respected while allowing Intel to receive any properly discoverable materials.

## II.    ARGUMENT

### A.    <u>Professor Vishkin's Communications Are Protected by the Attorney-Client Privilege.</u>

The communications at issue in this motion are those that, if sent from a commercial email provider such as Google's Gmail, would indisputably be protected by attorney-client privilege. Specifically, this motion deals with those emails in which Professor Vishkin obtained legal advice and services related to the asserted patents from various patent prosecution and litigation counsel. *See* Vishkin Decl. ¶¶ 2-3. These communications would typically be a bread-and-butter application of privilege law. *See In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998) ("The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.").

Notwithstanding the purpose and content of these emails, Intel—which has not yet seen any of the materials at issue and did not inquire about whether Professor Vishkin expected them to be protected against disclosure—argues that ***none*** of Professor Vishkin's emails sent through

the University's servers are privileged.  Intel erroneously contends: (1) Professor Vishkin's emails sent using his University email address were not sufficiently confidential to warrant application of the privilege in the first instance; and (2) any privilege was waived by virtue of the University's search for documents in response to the Subpoena.  Intel's arguments fail both factually and as a matter of law, as explained below.

        *1.*      *Professor Vishkin's Use of the University's Email Servers Does Not Preclude Application of the Attorney-Client Privilege.*

Communications between a client and his attorneys do not lose their privileged status simply because they occur over email.  Rather, privilege attaches so long as the client had "a subjective expectation of confidentiality that is found to be objectively reasonable." *Convertino v. U.S. Dept. of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009).  Professor Vishkin expected that his email communications with attorneys through his University email address were confidential. Vishkin Decl. at ¶ 3-4.  As discussed further below, at all times Professor Vishkin's expectation that his communications were confidential was objectively reasonable.  Therefore his communications with his attorneys have been, and remain, protected by the attorney-client privilege.

To determine the reasonableness of expectations of confidentiality, this District follows the factors set forth in *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 257 (S.D.N.Y. 2005): "(1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?" *Convertino*, 674 F. Supp. 2d at 110 (quoting *Asia Global*).  In the present situation, all four factors weigh in favor of finding a reasonable expectation of privacy that preserves the privilege:

1. Professor Vishkin was not aware of any University policy banning personal use. Vishkin Decl. ¶ 4. Indeed, the Faculty Handbook is silent on the issue (*see generally* https://faculty.umd.edu/policies/) and XMTT is not aware of any evidence to the contrary. Very recently, the University introduced a new IT standard for email use. *See* Vishkin Decl. Ex. 9 at 1 ("The university has adopted a ***new*** IT standard that establishes requirements related to using email to conduct university business." (emphasis added)); *see also* Ex. 5 at 1 (University's website showing a posting date of October 22, 2019). But even if this "new" policy could be construed as a ban on personal use, the University did not previously have a public policy banning personal use nor could the policy fairly be made retroactive.

2. The University does not monitor Professor Vishkin's emails. Moreover, Professor Vishkin is not aware of any prior monitoring of his emails (Vishkin Decl. ¶ 4), and Intel has never provided XMTT with any evidence to the contrary.

3. Third parties do not have any right of access to Professor Vishkin's computer or e-mails. Although the University is a public institution and certain information is publicly available, the University classifies "Privileged information (attorney work product, attorney-client privilege, etc.)" as Category 2 within its Data Classification Standards (*see* Ex. 6 at 3), and such "information is to be kept confidential as a matter of institutional policy or practices" (*see* Ex. 6 at 1). Indeed, Maryland state law requires the University to deny public inspection of "privileged or confidential" records (M.D. Code, General Provisions, § 4-301(a)(1)), and as discussed above, Professor Vishkin's emails are privileged and confidential; accordingly, third parties have no right of access to Professor Vishkin's

emails notwithstanding that the University is otherwise subject to Maryland's public records laws.

4.  Until the University sent a University-wide email this October, Professor Vishkin was not aware of anyone at the University ever telling him that it might access his confidential emails. *See* Vishkin Decl. ¶ 4; *see also* Vishkin Decl. Ex. 10 at 1-2 ("Not once do I recall being informed that my email account … could not be used for confidential communications."). Even with respect to this particular Subpoena, the University did not provide advance notice to Professor Vishkin that it would be accessing his confidential emails before it started searching. *See* Vishkin Decl. ¶ 6; Vishkin Decl. Ex. 10 at 3 ("You did not inform me about any of what you were doing.").

All four of the *Asia Global* factors therefore weigh in favor of finding that Professor Vishkin's subjective expectation of confidentiality in using his University email address was objectively reasonable. Even under less favorable circumstances, this District finds such beliefs objectively reasonable and upholds attorney-client privilege. *See Convertino*, 674 F. Supp. 2d. 110 ("The DOJ maintains a policy that does not ban personal use of the company e-mail. Although the DOJ does have access to personal e-mails sent through this account, Mr. Tukel was unaware that they would be regularly accessing and saving e-mails sent from his account. Because his expectations were reasonable, Mr. Tukel's private e-mails will remain protected by the attorney-client privilege.") (citations omitted). The Court should therefore find that Professor Vishkin's communications with his attorneys were made with an objectively reasonable expectation of confidentiality. They are privileged.

2.      *The University's Collection Efforts in Response to the Subpoena*
        *Do Not Change the Privilege Analysis.*

Intel also argues that, regardless of whether Professor Vishkin's communications were

privileged in the first instance, any privilege was waived by virtue of the University's search for

and collection of documents in response to the Subpoena because the University has allegedly

reviewed the documents as part of its search process. To begin with, the factual premise of Intel's

argument is simply wrong. The University expressly confirmed that it had only been performing

an automated, keyword-based search for documents and that "no review or disclosure of emails or

other records shall take place until the University receives direction from the court." *See* Ex. 2

at 1-2. Therefore, the University's search for and collection of documents in response to the

Subpoena could not have breached the confidentiality required to preserve privilege, as the

documents have still not been reviewed by any human third parties and are therefore in effectively

the same state as they were prior to the Subpoena.

Even if the University had collaterally reviewed the communications at issue while

complying with the Subpoena, involuntary disclosure in response to a subpoena does not waive

privilege. *See In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373 (D.C. Cir. 1984). ("The

distinction between voluntary disclosure and disclosure by subpoena is that the latter, being

involuntary, lacks the self-interest which motivates the former. As such, there may be less reason

to find waiver in circumstances of involuntary disclosure."); *see also Spears v. First Am.

eAppraiseIT, LLC*, 75 F. Supp. 3d 208, 212 (D.D.C. 2014) ("Furthermore, documents produced

pursuant to a subpoena are not voluntarily disclosed. … There is less reason to find waiver when

documents have been provided pursuant to a subpoena…."); *In re Vitamin Antitrust Litig.*, 2002

WL 35021999, at *28 (D.D.C. Jan. 23, 2002).

"[W]hen the disclosure of privileged material is involuntary"—as it is in the present situation by virtue of Intel's Subpoena—"we will find the privilege preserved if the privilege holder has made efforts 'reasonably designed' to protect and preserve the privilege." *See S.E.C. v. Lavin*, 111 F.3d 921, 930 (D.C. Cir. 1997) (quoting another source, alterations in original).  In *Lavin*, the Court found no waiver where the party asserting privilege: (1) "immediately asserted the privilege"; (2) "secured an arrangement [to] provide [the party asserting privilege] with notice and an opportunity to object before" production; (3) "intervened in [the relevant] case to preclude the [privileged] production." *Id.* at 931.  These steps were sufficient to preserve privilege even though (and unlike here) the third party in possession of the documents had reviewed the documents. *Id.* at 932-33; *see also Cobell v. Norton*, 213 F.R.D. 69, 76-77 (D.D.C. 2003) ("This Court concludes that when defendants learned about the disclosures by the [third-party] Monitor, they commenced efforts that were reasonably designed to preserve the attorney-client privilege. … Accordingly, the Court finds that any disclosures [] made by parties other than defendants [] do not constitute a waiver of the attorney-client privilege….").

XMTT has taken every one of the steps found sufficient in *Lavin* to preserve privilege, and then some.  XMTT promptly asserted the privilege, has been conferring with both Intel and the University to try to reach a reasonable resolution of the issue, and has secured the University's agreement to not produce the documents until the Court resolves the dispute. *See, e.g.*, Ex. 4 at 8. Both XMTT's counsel and Professor Vishkin have discussed these matters at length with the University and thought they had arrived at a sensible, practical procedure that would avoid motion practice.  But Intel refused to agree to that reasonable solution, instead insisting that all of Professor Vishkin's materials—which are known full well to include a large number of privileged and work product documents—be shipped directly to Intel, his litigation adversary.  Faced with Intel's

intransigence, XMTT secured the University's agreement to not review or produce any documents until the issue was resolved by the Court. *See* Ex. 2 at 1. And now, XMTT is moving the Court seeking an order that will put the issue to rest. These are exactly the types of steps reasonably designed to protect and preserve the privilege envisioned by *Lavin* and *Cobell*, and, as such, the Court should find that there has been no waiver of privilege as a result of the University's efforts to search for and collect documents in response to the Subpoena.

Ultimately, the "attorney-client privilege is ***highly valued***. Accordingly, courts should be cautious about finding" waivers. *In re Keeper of Records*, 348 F.3d 16, 23 (1st Cir. 2003) (emphasis added). Adopting Intel's position could substantially expand waiver law in this District, turning Professor Vishkin's longstanding, reasonable expectations on their head. Intel's position should accordingly be rejected, in favor of the far more appropriate, practical compromise XMTT has proposed.

## B.      Professor Vishkin's Documents Are Also Protected By The Work-Product Doctrine.

Many of Professor Vishkin's documents are also protected under the work-product doctrine separately and in addition to their protected status under the attorney-client privilege. This Court should therefore modify the Subpoena in accordance with XMTT's compromise proposal regardless of how it rules on the issue of attorney-client privilege, because these protections are distinct and additive. *See In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145 (D.C. Cir. 2015) ("It is hornbook law that [w]aiver of the [attorney-client] privilege should always be analyzed distinctly from waiver of work product.") (alterations in original, internal quotations omitted).

As background, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P.

26(b)(3)(A). "The testing question for the work-product privilege, we have held, is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal quotation marks omitted). "As the Supreme Court has made clear, ***the doctrine should be interpreted broadly and held largely inviolate***." *Judicial Watch, Inc. v. Dept. of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (emphasis added).

Many documents contained in Professor Vishkin's email account are unquestionably protected by the work-product doctrine. For example, Professor Vishkin's emails include XMTT's trial counsel's opinions on strategy in the pending litigation against Intel. There can be no reasonable dispute that such analyses contain opinions of counsel that were created in anticipation of litigation and, as such, should be afforded work-product protection. To date, Intel has only contended that Professor Vishkin's e-mails are not entitled to the attorney-client privilege protection (*see* Ex. 3 at 2) and has not argued that, or identified any reason why, the work-product protection would not apply.

Professor Vishkin had an objectively reasonable expectation of confidentiality. There are no facts supporting waiver even of attorney-client privilege, and it "is well-settled that it is more difficult to waive the attorney work-product privilege than it is to waive the attorney-client privilege." *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 252 (D.D.C. 2013) (collecting cases). "Because the work-product doctrine is designed to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent and not, as the attorney-client privilege is designed, to protect a confidential relationship, not all disclosures to third parties waive the protection afforded by the doctrine. ... Three main

factors determine whether work-product protection has been waived: (1) the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege; (2) the party had no reasonable basis for believing that the disclosed materials would be kept confidential []; and (3) waiver of the privilege in these circumstances would not trench on any policy elements now inherent in this privilege." *U.S. v. Williams Cos., Inc.*, 562 F.3d 387, 394 (D.C. Cir. 2009) (internal quotation marks omitted).

None of the *Williams* factors apply in the present situation: (1) XMTT does not seek to partially disclose any of the work-product material in an unfair sword-shield strategy; (2) Professor Vishkin had an objectively reasonable basis that the documents would be kept confidential, as discussed above; and (3) finding waiver and permitting opposing counsel to obtain XMTT's counsel's work product would undermine the flow of information necessary to provide the best legal advice and service to XMTT.  Ultimately, "only disclosures which are 'inconsistent with the adversary system' waive the protection of the work-product rule," and Professor Vishkin's use of a neutral third party's email server is not at all inconsistent with the adversarial system, so the Court should not find any waiver. *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C. 1984).

In short, Intel's broad subpoena must be limited at minimum to allow XMTT to review the materials sought for work-product, which is protected under a broader doctrine that applies regardless of Intel's arguments about attorney-client privilege.

C.    **The Subpoena Improperly Circumvents The ESI Order And Subjects XMTT To Undue Burden.**

The Subpoena also improperly attempts to circumvent the ESI Order entered by the Court in the underlying litigation and seeks to subject XMTT to undue burden, particularly if handled in the manner Intel demands.  Specifically, Intel proposes that the University produce all documents

to both parties simultaneously, which would force XMTT's counsel to review a large volume of documents so that XMTT could claw back the protected documents under Federal Rule of Civil Procedure 45(e)(2)(B), after Intel has already had a chance to review the protected contents of the documents. *See* Ex. 3 at 2 (Intel's counsel proposing that XMTT follow the procedure of FRCP 45(e)(2)(B)). Such a procedure would needlessly expose protected materials of the most sensitive sort, thwart the logical procedure for production set forth in the ESI Order, and subject XMTT to undue burden. As such, this Court should quash or modify the Subpoena under FRCP 45(d)(3)(A)(iv).

The Court handling the underlying litigation already entered an ESI Order that sets forth a typical and reasonable process by which the parties can identify custodians and search terms, review hits for privilege and work-product protection, and produce non-privileged documents. *See* Ex. 7 at §§ 4, 6. Intel disregarded this sensible approach and instead provided the University with a secret set of search terms that XMTT still does not know (*see* Ex. 2 at 2), and now Intel insists on receiving all of the results at the same time as XMTT despite Intel's knowledge that XMTT is asserting privilege and work-product protection over many of the results. This procedure certainly does not comport with the spirit or purpose of the ESI Order, nor does this procedure comply with the terms of the ESI Order which requires that the parties "timely meet and confer in good faith to determine whether the parties can agree on all search terms to be used for each Non-Custodial Data Source," which Intel did not do. *See* Ex. 7 at 16. Moreover, this procedure would subject XMTT to undue burden by forcing XMTT's counsel to race to review potentially tens of thousands of documents for privilege and work-product protection in order to claw those documents back

before Intel can further review them. There is simply no reason for XMTT to be subjected to such

undue burden when the ESI Order already addresses this situation.[5]

In short, it would make no sense for XMTT to be subjected to the undue burden of racing

to review documents as quickly as possible to claw back documents that should not be produced

to Intel in the first place. Thus, at a minimum, the subpoena should be modified to order the

University to first produce the documents to XMTT so that XMTT may review the documents for

privilege and work-product protection, and then XMTT will produce to Intel the remaining

documents along with a privilege log for anything withheld, in accordance with the ESI Order.

## III.   CONCLUSION

Intel's overreaching subpoena followed by its refusal to compromise in any reasonable

manner should not be permitted to effect an indiscriminate waiver of the attorney-client privilege

or work-product protection in sensitive documents that Professor Vishkin has always reasonably

believed were confidential. Nor should Intel be permitted, through a third-party subpoena, to

circumvent the ESI Order in the underlying litigation to which it is a party. There is a far more

sensible solution here than requiring the University to release Professor Vishkin's protected

communications, in full, to his litigation adversary. XMTT respectfully requests that the Court

modify the Subpoena to enforce the practical procedure proposed by XMTT herein and

contemplated by the ESI Order: namely, that XMTT first review the documents for privilege and

---

[5] The ESI Order plainly applies to Professor Vishkin's emails stored on the University's servers. The Order governs production from "***Non-Custodial*** Data Sources," which it defines as "a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database." *See* Ex. 7 at 2. Thus, it does not matter that these emails reside on the University's servers which Professor Vishkin does not personally organize, manage, or maintain.

work-product protection, and then provide the remainder to Intel along with a privilege log of anything withheld.

Dated: November 22, 2019                    Respectfully submitted,

                                            _____
                                            Benjamin B. Klubes (D.C. No. 428852)
                                            BUCKLEY LLP
                                            2001 M Street, N.W., Suite 500
                                            Washington, DC 20036
                                            Telephone: (202) 349-8000
                                            bklubes@buckleyfirm.com

                                            *Counsel for Plaintiff XMTT, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2019, a true and correct copy of the

foregoing document has been served via email and postage pre-paid, first class U.S. Mail on the

following:

Jack B. Blumenfeld
Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jtigan@mnat.com

Brian D. Matty
Jeffrey S. Seddon, II
Laurie N. Stempler
Michael Wueste
Paul A. Bondor
Priyanka R. Dev
Thomas J. Derbish
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
bmatty@desmaraisllp.com
jseddon@desmaraisllp.com
lstempler@desmaraisllp.com
mwueste@desmaraisllp.com
pbondor@desmaraisllp.com
pdev@desmaraisllp.com
tderbish@desmaraisllp.com

*Counsel for Defendant Intel Corporation*

Date: November 22, 2019

Benjamin B. Klubes (D.C. No. 428852)
BUCKLEY LLP
2001 M Street, N.W., Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
bklubes@buckleyfirm.com
*Counsel for Plaintiff XMTT, Inc.*

- 17 -